UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAMIAN WHEELER,

       Plaintiff,

                                        Case No.  18-CV-10346
vs.                                    HON.  GEORGE CARAM STEEH

RICHARD BILLINGSLEA,
And HAKEEM J. PATTERSON, et al.,

       Defendants.
_____/

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 23)

This 42 U.S.C. § 1983 excessive force suit arises out of an incident at

a gas station in which Defendant Detroit Police Officer Richard Billingslea

allegedly removed Plaintiff Damian Wheeler's semiautomatic pistol from his

person, slammed him against a door, and held his gun to Wheeler's neck.

Wheeler alleges that Defendant Detroit Police Officer Hakeem J. Patterson

watched the alleged assault with his weapon drawn.  Wheeler has also

sued the City of Detroit and two John Doe defendants.  Now before the

court is Defendants' motion for summary judgment.  For the reasons set

forth below, Defendants' motion shall be denied as to the claims against

the individual officers, but shall be granted as to the *Monell* claim against

the City.

## I. Background Facts

The court construes the facts in the light most favorable to the nonmoving party, here, Wheeler. On the evening of April 18, 2017, Wheeler and his friend, Rondale Miller, stopped at a gas station at 17406 Harper in Detroit to purchase fuel. Wheeler testified to the following at his deposition. When he arrived at the service station, four Detroit police officers were parked in a police cruiser sitting near the gas pumps. (Doc. 25-3 at PgID 287-88). The officer sitting in the driver's seat was a light skinned African American, and the other three officers were white. *Id.* at PgID 288. After exiting his vehicle, Wheeler greeted the police officers through the open windows of their vehicle. *Id.* at PgID 304. Then, the police officer who had been in the driver's seat, stormed out of the vehicle, and forcefully removed Wheeler's semiautomatic pistol breaking its holster, spun him around, drew his gun and pressed the gun to Wheeler's neck. *Id.* at PgID 304-14.

Wheeler further testified that the officer said to him, "Mother fucker, do you have a license for this? You think you fucking tough? Nigger, get your ass up on this wall." *Id.* at PgID 316. Wheeler testified that the other three officers exited the police vehicle with their weapons drawn. *Id.* at PgID 314. At some point, Wheeler presented the officer with a copy of his

concealed pistol license, and the officer told him to "get [his] ass off the street," and Wheeler was able to leave the gas station. *Id.* at PgID 322. Wheeler treated at the hospital the next day for headaches, back pain, and a sprained arm. *Id.* at PgID 325.

Wheeler then brought this excessive force suit under § 1983 against Officers Billingslea and Patterson and two unidentified John Doe Officers, and the City of Detroit. Wheeler also brought supplemental state law claims of assault and battery, gross negligence, and intentional infliction of emotional distress. The parties stipulated to the dismissal of the City of Detroit as to Count I only. The parties did not stipulate to the dismissal of Wheeler's *Monell* claim against the City of Detroit for negligent supervision, training, and discipline as pled in Count III.

Wheeler testified that he saw the name tag of the officer who allegedly assaulted him which read, "Billingslea." *Id.* at PgID 293. Wheeler also submitted an affidavit that he saw a photograph of Defendant Billingslea and identified him as the officer who pulled his gun on him and assaulted him. (Doc. 25-4, PgID 372 at ¶ 5). In his affidavit, he also identified a photograph of Defendant Patterson as one of the officers present during the incident. *Id.* at ¶ 6. Wheeler's companion, Miller, also submitted an affidavit that he recognized a photograph of Officer Billingslea

as the officer who pulled the gun on Wheeler, (Doc. 25-5, PgID 379 at ¶ 5),

and recognized a photograph of Officer Patterson as an officer who was

present at the time of the incident. *Id.* at ¶ 6.

## II. Standard for Summary Judgment

Federal Rule of Civil Procedure 56(c) empowers the court to render

summary judgment "forthwith if the pleadings, depositions, answers to

interrogatories and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law." *See Redding v. St.*

*Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has

affirmed the court's use of summary judgment as an integral part of the fair

and efficient administration of justice. The procedure is not a disfavored

procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986);

*see also Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir.

1995).

The standard for determining whether summary judgment is

appropriate is "'whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v.*

*Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Tolan v. Cotton*, 572 U.S. 650, 660 (2014); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (*citing*

*Anderson*, 477 U.S. at 252).

### III. Analysis

Defendants argue that the individual Defendants and the City of

Detroit are entitled to summary judgment.  The court discusses these

Defendants separately below.

**A.     Individual Liability**

Defendants argue that they have introduced sufficient proofs that

Officers Billingslea and Patterson were not at the Mobil gas station on the

date and time of the alleged assault such that they are entitled to summary

judgment.  Defendants are correct that in order to survive summary

judgment, Wheeler must point to sufficient record evidence to create a

disputed issue of material fact as to whether each individual officer was

"personally involved" in the conduct that allegedly violated his constitutional

rights.  *Fazica v. Jordan*, __ F.3d __, No. 18-1457, 2019 WL 2417358, at *4

(6th Cir. June 10, 2019) (citing *Binay v. Bettendorf*, 601 F.3d 640, 651 (6th

Cir. 2010)).  Having direct involvement in the constitutional violation does

not require that an officer necessarily place his hands on the plaintiff.  An

officer who fails to prevent excessive force may be liable where, "(1) the

officer observed or had reason to know that excessive force would be or

was being used, and (2) the officer had both the opportunity and the means

to prevent the harm from occurring." *Id.* at *5 (internal quotation marks and citation omitted).

Defendants argue that Officers Billingslea and Patterson could not have been involved in the incident because (1) an activity log shows that Officer Billingslea was working with a black male and white male on April 18, 2017, which does not match racial composition of officers as described by Wheeler, (2) the activity log does not document an encounter at the Mobil gas station or with Wheeler, (3) in-car camera footage indicates that Billingslea's unit was at the scene of a traffic investigation in the area of Woodhall and Berden at the time of the alleged incident with Wheeler, (4) a review of all activity logs of all units working in the Ninth Precinct on April 18, 2017 revealed a unit that matched the racial composition described by Wheeler consisting of Officer Stephen Heid (white male), Christopher Rabior (white male), and Marvin Taylor (black male), but these officers were conducting a narcotics investigation from 6:05 p.m. to 11:05 p.m. and were not at the Mobil gas station, (5) at the time of the alleged incident, there were no technical response units on duty, and (6) the Precinct Daily Detail report shows that Patterson was not on duty on the date and time of the alleged incident.

In opposition to Defendants' motion for summary judgment, Wheeler

relies on his own deposition testimony, and the affidavits sworn to by himself and his companion, Miller, which identify Officers Billingslea and Patterson as the officers responsible for the alleged assault. Defendants argue that police records indicate that these officers could not have been at the scene of the alleged assault, but these written documents are not dispositive. Of course, these records may be used to challenge Wheeler's and Miller's credibility, but they would not necessarily preclude reasonable jurors from finding in Plaintiff's favor. Defendants also argue that Wheeler's and Miller's identification of them from photographs should be disregarded because the photographs were black and white, smaller than 1" by 1", and were more than five years old. Once again, these considerations go to the credibility of the identifications made by Wheeler and Miller, which jurors will be called upon to decide at trial, but these details in and of themselves are insufficient to entitle these officers to summary judgment. It is possible that reasonable jurors would credit these photo identifications despite their limiting characteristics as argued by Defendants. At trial, jurors will be able to compare Officers Billingslea's and Patterson's likeness to the photographs themselves. In sum, because genuine issues of material fact exist as to whether Officers Billingslea and Patterson were responsible for the alleged assault, their motion for summary judgment must be denied.

**B.    Municipal Liability**

Count III of the Complaint alleges that the City of Detroit is liable

under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), for failure to

adequately train, supervise, or discipline Officers Billingslea and Patterson,

and claims that the City has inadequate policies related to constitutionally

permissible seizures, use of force, and preservation of evidence.  The City

argues it cannot be liable under *Monell* because Wheeler has not shown

that the conduct giving rise to his alleged injuries is attributable to a policy

or custom of the City, or that the alleged deprivation is attributable to a

failure by the City of Detroit to train, supervise, and discipline its officers.

 "To succeed on a municipal liability claim, a plaintiff must establish

that his or her constitutional rights were violated and that a policy or custom

of the municipality was the 'moving force' behind the deprivation of the

plaintiff's constitutional rights." *Brown v. Battle Creek Police Dep't*, 844 F.3d

556, 573 (6th Cir. 2016) (citing *Monell*, 436 U.S. at 694). Systematically

failing to adequately train police officers can constitute a custom or policy

that leads to municipal liability. *Miller v. Sanilac Cty.*, 606 F.3d 240, 255

(6th Cir. 2010).

However, "[t]he inadequacy of police training only serves as a basis

for § 1983 liability 'where the failure to train amounts to *deliberate*

*indifference* to the rights of persons with whom the police come into contact.'" *Slusher v. Carson*, 540 F.3d 449, 457 (6th Cir. 2008) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)) (emphasis in original). Most importantly, "'[t]o establish deliberate indifference, the plaintiff 'must show prior instances of unconstitutional conduct demonstrating that the [City] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Brown*, 844 F.3d at 573 (quoting *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005)). To succeed on a failure-to-train claim, a plaintiff must prove the following: (1) the training was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury. *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (citing *Harris*, 489 U.S. at 387). The standard for finding a municipality liable essentially amounts to the judicial determination that "the city itself [decided] to violate the Constitution." *Connick v. Thompson*, 563 U.S. 51, 61-62 (2011). Also, liability for failing to investigate or discipline officers cannot be derived from a single act by a non-policy making employee. *Oklahoma City v. Tuttle*, 471 U.S. 808, 821, 824 (1985).

In response to the City's motion for summary judgment, Wheeler has come forward with no evidence in support of his *Monell* claim. Instead, Wheeler argues that the City has not made Officers Billingslea and Patterson available for deposition despite four notices prepared by his counsel. Thus, Wheeler asks the court to delay ruling on the *Monell* claim until it deposes these Defendants. In its Reply, the City responds that it communicated with Wheeler's counsel on numerous occasions about the depositions, and made reasonable efforts to schedule those depositions at mutually agreeable times. In support of its response, the City has attached several email correspondences which verify its good faith efforts to schedule the depositions of these officers. (Doc. 26-2, 26-3, 26-4, 26-5).

Wheeler never filed a motion to compel Defendants to appear for their depositions, and never filed a motion for sanctions for their failure to do so either. Discovery is now closed. It would be optimal for the parties to find a mutually agreeable time for those depositions to take place prior to trial, but the court will not delay ruling on the City of Detroit's motion for summary judgment to allow the parties to do so under these circumstances. Also, it is unlikely that the deposition of Billingslea or Patterson standing alone would be sufficient to raise a genuine issue of material fact as to the *Monell* claim. The City of Detroit also argues that

the fact that Officer Billingslea was criminally charged and terminated from his employment as a result of another incident, suggests that the City properly trains, supervises, and disciplines its officers. (Doc. 25-7). Because Wheeler has failed to introduce any evidence in support of his *Monell* claim and discovery has closed, the City of Detroit is entitled to summary judgment.

## C.    John Doe Defendants

In his Complaint, Wheeler names two John Doe defendants, whom he alleges watched Officer Billingslea assault him with their weapons drawn. (Complaint, ¶¶ 20-23). Wheeler never sought to amend his Complaint to name the John Does and failed to serve them as required under Federal Rule of Civil Procedure 4(m). The Sixth Circuit has held that a civil action against Doe defendants never commences where they were not identified by their real names or served with process. *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996) (citing *Bufalino v. Michigan Bell Tel. Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968)). Until a plaintiff amends his complaint to identify a John Doe defendant by his true name, "the John Doe allegations in the complaint are mere superflusage." *Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *5 (E.D. Tenn. Nov. 4, 2009) (collecting cases). Here, the discovery deadline was April 15, 2019,

and Wheeler never filed a motion to amend to substitute the real names of the John Doe Defendants.  Accordingly, the John Doe defendants shall be DISMISSED.

## IV. Conclusion

For the reasons set forth above, Defendants' motion for summary judgment (Doc. 23) is DENIED IN PART as to Plaintiff's claims against Defendants Billingslea and Patterson, and GRANTED IN PART as to the City of Detroit which is DISMISSED.  Also, the John Doe Defendants are DISMISSED.

**IT IS SO ORDERED.**

Dated:  June 19, 2019

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
June 19, 2019, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk